In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00250-CV
_____

IN THE INTEREST OF B.H. AND L.H.

_____

**On Appeal from the 317th District Court**
**Jefferson County, Texas**
**Trial Cause No. 24DCFM0301**

_____

**MEMORANDUM OPINION**

In this pro se appeal from a Final Decree of Divorce, Dalila Hernandez challenges the trial court's award of child support and property division, specifically related to the marital residence. For the following reasons, we affirm the trial court's order.[1]

---

[1]Since the parties share the same last name, we will refer to them by their first names.

**Relevant Background**

In March 2024, Dalila filed her Original Petition for Divorce. In June 2024, the parties attended mediation at the Dispute Resolution Center of Jefferson County. A copy of the Memorandum of Agreement from that day, was attached as "Exhibit A" to the parties' divorce decree. Relevant to this appeal, the agreement included the following terms. "The parties agree to list the home for sale on or before November 1, 2024[.] The lot will be listed for sale at the same time[.]" "It is agreed that Mario will pay child support in an amount consistent with Texas Family Law Guidelines."

On July 10, 2024, both parties appeared pro se in District Court to finalize their divorce. After a hearing, the trial court signed the decree on the same day. The Final Decree included orders for conservatorship, possession and access, child support for the parties' two minor children, and division of the marital estate. Dalila then timely filed her appeal.

**Issues**

In her first issue, Dalila challenges the trial court's property settlement division, specifically the marital home, arguing that "Mario and I went to mediation prior to our hearing and tried to come to an agreement of him letting me and the kids stay in the home until I can get back on my feet but he didn't want too. I felt pressure

2

to agree because I didn't want to prolong the process because of the severity of our marriage and agreed to put the house for sale on Nov 1st 2024." On appeal, Dalila alleges instances of family violence in their marriage resulting in the issuance of a protective order in 2022. She states that after she lost her job, the parties agreed that she would stay at home with the children, get her esthetician license and eventually build a "lash room" at their residence for her business. According to Dalila, moving out of the residence terminated her "only source of income[.]"

During the hearing, neither party provided testimony about the martial estate other than the memorandum of agreement and the trial court found that the proposed property division presented by the parties was "just and right[.]" Neither party objected to the findings.

In her second issue, Dalila challenges the trial court's award of child support, arguing that Mario did not disclose accurate income tax information on the day of trial and that his statement that he only does "drywall and paint[]" was inaccurate. On appeal, Dalila attached several exhibits to her brief including invoices from Mario's remodeling business, photographs of Mario's work trailer, partial tax records, checks, and social media posts of Mario's construction and remodeling work.

At the hearing, the trial court had the following exchange with Mario regarding his job and income.

THE COURT: All right. So, you're self-employed?

[MARIO]: Yes, sir.

THE COURT: And according to this, you made gross 34,000?

[MARIO]: Yes, sir. 57,000.

THE COURT: 57,000?

[MARIO]: Yes sir, but twenty went to the --

THE COURT: Where did it go?

[MARIO]: It went to depreciation for my truck.

THE COURT: So, actually your gross was $162,000; and then you've got truck and car expenses 1334. So, what -- so, that's a little over a thousand a month. What do you use that thousand dollars a month for? What does that pay for?

[MARIO]: For the truck, for gas.

THE COURT: And then you've got contract labor.

[MARIO]: Yes, sir.

THE COURT: Who does the contract labor?

[MARIO]: I got different guys, painters, drywall guys.

THE COURT: All right. And the depreciation is twenty; and you've got insurance, twenty-four; legal and professional services, 750 -- 715; office supplies, 490; supplies, 250 -- 2500. What kind of supplies is that?

[MARIO]: Material.

THE COURT: Okay. 1400 for utilities. What utilities does that pay for?

[MARIO]: Bills at the house.

THE COURT: At the house where you live?

[MARIO]: Yes, sir.

THE COURT: All right. I can't give you the depreciation, and I can't give you the bills. So, I'll take the -- I'll give you all the other expenses, but those two I just can't give you. Okay?

[MARIO]: Yes, sir.

THE COURT: So, let me see, see what that works out to be real quick. There it is. Cost of goods. So, is that different than the supplies?

[MARIO]: The cost of goods?

THE COURT: What's the cost of goods? What did you pay for when it comes to cost of goods?

[MARIO]: Oh --

THE COURT: What did you buy?

[MARIO]: -- I think it was tools? Yeah, for tools.

THE COURT: Okay. You've got 2500 for supplies. So, what's --

5

[MARIO]: The material probably, with -- I know some of the material costs.

THE COURT: All right. So, you don't know what the -- well, let me see if I can find something that has that documented. Are you a contractor?

[MARIO]: Yes.

THE COURT: What kind of work do you do?

[MARIO]: I do drywall, paint.

THE COURT: So, you spent -- so, you're telling me you spent maybe 16,000 on materials; and then supplies would be the other thing?

[MARIO]: Yes, sir.

THE COURT: All right. Okay. How many kids do y'all have?

[MARIO]: Two.

[DALILA]: Two.

THE COURT: And insurance, do you have insurance on the kids?

[MARIO]: No. We have Medicare.

[DALILA]: Medicaid.

THE COURT: Medicaid?

[DALILA]: Yes.

THE COURT: All right. You have to pay Medicaid back at 200. Okay?

[MARIO]: Yes, sir.

THE COURT: You don't have any other kids, just two?

[MARIO]: Yeah, one. I have another kid.

THE COURT: How old?

[MARIO]: He's 18.

THE COURT: That's gonna -- okay. All right. So, let the Court find that his gross monthly income is fifty-seven -- I'm sorry -- $5,739.80. After applying all of the deductions, including $200 a month for Medicaid, his net resources are 5,234.69 times 25 percent is 1,058.57 plus the 200 that goes to the State for Medicaid. Okay?

[MARIO]: Yes, sir.

THE COURT: Okay. So, that will be how we're going to do that. Let me find that order and fill that in. All right. And then the step-down will be $846.40 whenever a child graduates from high school -- okay? -- or turns 18, whichever comes first.

Dalila appeared pro se in the trial court and on appeal. We liberally construe a pro se appellant's brief. *See Giddens v. Brooks*, 92 S.W.3d 878, 880 (Tex. App.—Beaumont 2002, pet. denied). Nevertheless, pro se litigants must comply with the rules of evidence and procedure, and we do not afford them special treatment because they are acting pro se. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978). To preserve error for appeal, a party must make its objection to the trial court in a timely fashion and obtain a ruling thereon. *See* Tex. R. App. P. 33.1. Failure to make a complaint known to the trial court in a timely manner waives the complaint on appeal. *See Price v. Gardner*, No. 09-24-00193-CV, 2025 Tex. App.

7

LEXIS 181, at *4-5 (Tex. App.—Beaumont Jan. 16, 2025, no pet.) (mem. op.). The record reflects that Dalila appeared and agreed to the divorce decree and did not object to the trial court's award of the marital estate or to the trial court's questioning nor to the use of the admitted exhibits regarding calculation of Mario's child support obligation. Therefore, we conclude that Dalila failed to preserve her issues for appeal, and we overrule her first and second issues. *See In the Int. of E.E.G.*, No. 09-24-00148-CV, 2025 Tex. App. LEXIS 4740, at *9-10 (Tex. App.—Beaumont July 3, 2025, no pet.) (mem. op.) (holding appellant did to preserve child support issue for appeal by failing to object at trial); *In the Int. of J.D.*, No. 02-24-00515-CV, 2025 Tex. App. LEXIS 7667, at *8-9 (Tex. App.—Fort Worth Oct. 2, 2025, no pet.) (mem. op.) (same); *Boufaissal v. Boufaissal*, 251 S.W.3d 160, 161 (Tex. App.—Dallas 2008, no pet.) ("A party cannot appeal from a judgment to which she has consented or agreed absent an allegation and proof of fraud, collusion, or misrepresentation."); *In the Int. of O.A.G.*, No. 04-09-00022-CV, 2010 Tex. App. LEXIS 2593, at *4-5 (Tex. App.—San Antonio Apr. 14, 2010, no pet.) (mem. op.) (a motion for new trial is prerequisite to an appeal in which the appellant alleges misrepresentation, absent evidence establishing his allegations to provide to the court proof of the alleged misrepresentation); *Kirkconnell v. Kirkconnell*, No. 01-19-00449-CV, 2019 Tex. App. LEXIS 9949, at *6-7 (Tex. App.—Houston [1st

8

Dist.] Nov. 14, 2019, no pet.) (mem. op.) (holding the appellant waived the issue of the division of their community property when appellant did not object at trial to preserve the issue on appeal and the record was devoid of appellant's raising any new evidence issue of fraud, waste or breach of fiduciary duty in any post judgment motions); *Norman v. Norman*, No. 05-23-00831-CV, 2024 Tex. App. LEXIS 4038, at *6-7 (Tex. App.—Dallas June 5, 2024, no pet.) (mem. op.) (holding complaint on appeal fails when the parties reach an agreement about the property settlement and the trial court does not determine the parties' marital property settlement).

Having overruled both of Dalila's issues, we affirm the trial court's order.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on March 12, 2026
Opinion Delivered June 25, 2026

Before Golemon, C.J., Johnson and Chambers, JJ.

9